IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


| | | |
|---|---|---|
| JERRY WAYNE HUGHES and | * | |
| LAVERNE HUGHES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:14CV00506 SWW |
| | * | |
| GOODWILL INDUSTRIES OF | * | |
| ARKANSAS, INC; ET AL., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |


## Opinion and Order


Pending before the Court is a motion for summary judgment filed by the

remaining defendants in this case, Goodwill Industries of Arkansas, Inc.

("Goodwill") and Cedric Horton ("Horton").  Plaintiffs filed a response to

defendants' motion and defendants filed a reply to the response.  For the reasons

stated below, the motion is granted.

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed.R.Civ.P 56(a).  To support an assertion that a fact cannot be or

is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)(citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)(citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

## Background

The following facts are undisputed and taken largely from the parties' statements of undisputed material facts.[1]  In 2011, Goodwill hired Jerry Wayne Hughes, a white male, as a sales associate for its store in Cabot, Arkansas.  Prior to the Cabot store opening, Hughes applied for and was hired to be a "key holder."  As a key holder, Hughes was responsible for supervising store employees, including "producers" - employees tasked with hanging clothes on racks to be displayed on the store's sales floor.  At the time he was hired, Hughes received an employee handbook and was aware that he was an at-will employee.  The handbook outlined Goodwill's commitment to equal employment and its policies on such things as harassment, workplace violence and weapons, and grievances.

During his two and one-half years working at Goodwill, Hughes was disciplined a number of times.  On June 20, 2011, he received a Notice of Policy Violation for clocking in early.  On July 16, 2011, he was written up for removing funds from the register to purchase supplies.  On September 13, 2013, Hughes was disciplined for leaving the store early.  On another occasion, Hughes was disciplined for leaving the store premises even though he was the only manager on

---

[1]*See* ECF Nos. 40 and 46.  Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried.  "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1 (c).

duty.[2]  Separate Defendant Horton, the District Manager, an African-American, testified he received complaints about the manner in which Hughes would talk to employees and treat them.[3]  Some employees complained that Hughes had made inappropriate racial comments while working.[4]  Shawn Creager, a Goodwill employee, says he overheard Hughes say that Lesia Smith, a black key holder at the Cabot store, "can get back to work in the cotton field."[5]  Candida Wilson, a white employee, said Hughes came to her on a couple of occasions to tell her that customers did not like Lesia Smith being in the store because she is black.  Wilson said Hughes also told her that Lesia and Alex, another employee, look out for each other because it's a "black thing."  Wilson said she thought Hughes had a generally racist attitude.[6]  In response to those assertions, Hughes said that Wilson lied and that she asked Creager to lie about the cotton field statement because Wilson wanted to get rid of Hughes so she could have his job.[7]  Wilson did not become a key holder and she quit her job at Goodwill.[8]

---

[2]Defs.' Mot. Summ. J., Ex. E, Hughes Discipline Reports (ECF No. 38-6).

[3]*Id*., Ex. H, Horton Dep. (ECF No. 38-9) at 35.

[4]*Id.* at 39-41.

[5]*Id.*, Ex. F, Employee Statements (ECF No. 38-7) at 1.

[6]*Id*. at 2-3.

[7]*Id*, Ex. A, Hughes Dep. (ECF No. 38-2) at 38.

[8]Defs.' Statement of Undisputed Material Facts (ECF No. 40) at ¶ 27.

Shirl Holmes, a black Goodwill employee, testified that four different employees told her that Hughes had made the comment that if he had his way, Lesia Smith would be chopping cotton.[9]  She said there was a lot of tension in the store because of Hughes's alleged statements.[10]  Holmes also said Hughes had been picking on her, putting wet clothes and rubber snakes in her bin and hanging dirty clothes on her racks.[11] Hughes testified that beginning in late summer 2013, there were incidents where Holmes "cussed" him and told him he was prejudiced. Holmes never physically touched Hughes.[12]  Hughes said he went to Andy Hollowell, the store manager, who tried to handle the first "cussing" incident by talking with both Hughes and Holmes about it within a day or two.[13]

Hughes testified that a second verbal altercation took place when he went into the area where Holmes worked and she cussed at him and called him names. Hughes said Hollowell and Horton told him to stay out of Holmes's area but he went through it anyway to get to the donation area.[14]  More verbal altercations

---

[9]Defs.' Mot. Summ. J., Ex. J, Holmes Dep. (ECF No. 38-11), at 14-16.

[10]*Id*. at 13.

[11]*Id,* at 29.

[12]*Id*., Ex. A, Hughes Dep. (ECF No. 38-2) at 43.

[13]*Id.* at 47.

[14]Pl's. Resp. to Mot. Summ. J., Ex. B, Hughes Dep. (ECF No. 44-2) at 48.

occurred when Hughes would go into the area of the store where Holmes worked, with Holmes accusing Hughes of being a racist and Hughes denying he was prejudiced.  Hughes testified that during an incident in October 2013, Holmes said she would blow Hughes's head off if she had her gun.[15]  Hughes testified he only heard part of her statement but was told by someone else that Holmes made the threat.[16]  Holmes denies she made the statement.

In November 2013, Hughes asked Holmes and others to "run the racks," which means to put clothing out on the sales floor.  Running the racks is part of everyone's job in the store, including management.  Holmes testified they had not completed a rack to run and that she thinks Hughes came into the production area with the intention of bullying the employees.   Hughes testified that when he got no response to his directive to run the racks, he called the assistant manager on the phone and then tried to send the employees home.[17]  Holmes admits she "exploded" and called Hughes a "prejudiced prick."[18]  Holmes says she never came at Hughes to physically attack him and did not touch him.[19]  According to Hughes,

---

[15]*Id*. at 55.

[16]*Id*. at 55-56.

[17]*Id.* at 64-65.

[18]Defs.' Mot. Summ. J., Ex. J, Holmes Dep. (ECF No. 38-11) at 19-22.

[19]*Id*. at 32.

6

there was pushing and shoving and one employee got knocked down.[20]

Following the November incident, Hughes contacted Goodwill's Human Resources Department and two employees of that department, Jon Moore and Doris Bell, conducted an investigation. They carried out extensive interviews. Hughes was interviewed for over two hours and during that time he never stated he was subjected to racial discrimination or treated differently because of his race. During their interviewing, Moore and Bell learned of the previous unprofessional conduct of Hughes. Store employees told Moore that Hughes would walk through the production area regularly and be pushy, badger employees, and act unprofessionally.

Holmes was disciplined based on the November incident, and Hughes was disciplined based upon that incident plus previous incidents and behavior.[21] Both Holmes and Hughes kept their jobs. Holmes was transferred and placed on a final written warning. Hughes was demoted and placed on a final written warning. The Chief Operating Officer, Brian Marsh, made the decision to demote Hughes and approved the Notice of Policy Violation after communicating with Moore regarding the case. Moore and Horton met with Hughes to advise him of the

---

[20]Pl.'s Resp. to Mot. Summ. J., Ex. B, Hughes Dep. (ECF No. 44-2) at 65.

[21]Defs.' Mot. Summ. J., Ex. K, Moore Dep. (ECF No. 38-12) at 36.

demotion.  Rather than accept the demotion, Hughes voluntarily terminated his employment with Goodwill.

Hughes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 23, 2014.  He claimed he was denied vacation pay, subjected to intimidation, treated differently in the terms and conditions of his employment, and discharged because of his race, sex, age, and in retaliation.  The EEOC dismissed his charge and issued a Notice of Right to Sue on June 27, 2014.  Hughes and his wife filed a complaint in this Court on August 27, 2014, and an amended complaint on November 3, 3014.

## Discussion

Hughes complains defendants discriminated against him on the basis of his race by holding him to a different standard than Holmes under the Workplace Violence Policy and giving favorable treatment to Holmes,[22] subjecting him to a hostile work environment,[23] and constructively discharging him.[24]  He also asserts a state law claim for defamation.[25]  His wife,  Laverne Hughes, brings a claim for loss of consortium.

---

[22]Am. Compl. at ¶ 40.

[23]*Id*. at ¶ 42.

[24]*Id*. at ¶ 43.

[25]The Court previously dismissed Mr. Hughes's claim for outrage.  *See* ECF No. 25.

1.  Title VII Race Discrimination Claim

Hughes can establish a *prima facie* claim of race discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *McCullough v. Univ. of Arkansas for Med, Sciences*, 559 F.3d 855, 860 (8th Cir. 2009).

"'[D]irect' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence.  A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).  Direct evidence includes evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. *Shaffer v. Potter*, 499 F.3d 900, 904 (8th Cir. 2007).  Under the *Price-Waterhouse* test, if a plaintiff can produce evidence that directly reflects that an illegitimate criterion was a motivating factor in the employment decision, the burden of persuasion shifts to the defendant.  It is then defendant's burden to prove the same

decision would have been made, even if it had not taken the illegitimate criterion into account. *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200, 202 (8th Cir. 1993).

However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Togerson v. City of Rochester*, 643 F.3d 1043-44 (8th Cir. 2011)(en banc)(quoting *Griffith*, 387 F.3d at 736).

As direct evidence that his demotion was racially motivated, Hughes asserts that both Holmes and Horton accused him of being a racist. In addition, he argues the fact that his demotion was based on his conflict with Holmes is evidence that racial animus was a motivating factor. "[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination." *Rivers -Frison v. Southeast Missouri Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998). "We have carefully distinguished between '[c]omments which demonstrate a 'discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions,' from 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process.'" *Id.* (quoting *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th

Cir. 1991).  In a case where a white plaintiff argued that being called a racist was

evidence of discriminatory intent, a court found no *prima facie* claim of

discrimination.  "The circumstances of Plaintiff's termination do not give rise to an

inference of racial animus or discrimination against Plaintiff.  Plaintiff has not

demonstrated that he was called a racist because he is Caucasian.  Rather, Plaintiff

was called a racist because the co-worker interpreted Plaintiff's conduct *toward*

*him* as rooted in racial bias."  *Dodge v. Wynne*, 2006 WL 2037575 at *2 (D.Utah

July 18, 2006).   According to Hughes,  Holmes called him a "prejudiced white

prick."[26]  The evidence establishes that she called him that because she had heard

that Hughes had made racially prejudiced remarks not because of racial animus.

Furthermore, Holmes was not a decision-maker.

 Hughes testified Horton called him a racist and a liar.[27]  Horton denies this.

According to the evidence, Horton had a meeting with Hughes at Goodwill's

corporate offices to discuss Holmes verbal outbursts and complaints that Hughes

was making racist comments.  During that meeting, Hughes admitted he was

having difficulty getting along with other employees.[28]  Hughes alleges that it was

---

[26]Pls.' Resp. to Mot. Summ. J., Ex. B, Hughes Dep. (ECF No. 44-2) at 52.  Holmes said she called Hughes a "prejudiced prick."  Defs.' Mot. Summ. J., Ex. J, Holmes Dep. (ECF No. 38-11) at 22.

[27]Pls.' Resp. to Mot. Summ. J., Ex. B, Hughes Dep. (ECF No. 44-2) at 45.

[28]Defs.' Statement of Undisputed Material Facts (ECF No. 40) at ¶31.

during this meeting that Horton called him a racist and liar.[29]  Horton did not issue any discipline to Hughes at the time of the meeting,[30] and there is no evidence that Horton was involved in making the determination to demote Hughes.[31]  The evidence is undisputed that COO Brian Marsh, who is white, made the decision to demote Hughes.  The Court finds Hughes fails to establish by direct evidence that his race was a motivating factor in the adverse employment decision.

In the absence of direct evidence, the Court analyzes Hughes's claim under the *McDonnell Douglas Corp. v. Green* burden-shifting framework.  Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  *McGinnis v. Union Pacific R.R.Co.,* 496 F.3d 868, 873 (8th Cir. 2007).  The plaintiff's successful establishment of a *prima facie* case creates a presumption of unlawful discrimination and shifts the burden to the defendant, who must then articulate a legitimate, nondiscriminatory reason for its actions.  *Id*. Finally, if the defendant proffers such a reason, the plaintiff must then show that the defendant's proffered reason is merely a pretext for discrimination. *Id*.  To establish a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected group; (2) he was meeting the legitimate expectations of the

---

[29]Pls.' Resp. to Mot. Summ. J., Ex. B, Hughes Dep. (ECF No. 44-2) at 45/

[30]Defs.' Statement of Undisputed Material Facts (ECF No. 40) at ¶ 34.

[31]*Id* at ¶ 64.

employer; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Lewis v. Heartlamd Inns of Am.,* 591 F.3d 1033, 1038 (8th Cir. 2010).

The Court finds Hughes cannot establish a *prima facie* case of discrimination.  At the time of his demotion, Hughes was not meeting the legitimate expectations of his employer.  An investigation of the November incident between Hughes and Holmes resulted in a determination that Hughes had a history of being aggressive with his employees and having an unprofessional, badgering-type  relationship with them.  Further, Hughes cannot establish that he was demoted under circumstances that give rise to an inference of discrimination. Hughes argues that he and Holmes were treated differently.  To make that claim, Hughes must show that Holmes was "similarly situated in all relevant respects." *Young v. Builders Steel Co.,* 754 F.3d 573, 578   (8th Cir. 2014) (quoting *Chappell v. Bilco Co*., 675 F.3d 1110, 1119 (8th Cir. 2012)).   He argues they both violated the Workplace Violence Policy but were disciplined in different ways.  However, Hughes was a supervisor and Holmes was a sales associate.  In his supervisory role, Hughes was expected to act in a more professional manner in responding to Holmes.  Further, Holmes was disciplined for the one incident while Hughes's

discipline took previous incidents and behavior into account as well. "In reverse discrimination cases, the plaintiff has also been expected to show that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Woods v. Perry*, 375 F.3d 671, 673 (8th Cir. 2004 (quoting *Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir. 1997)). Here, Hughes presents no evidence that Goodwill is the "unusual employer who discriminates against the majority."

Even assuming for argument that Hughes established a *prima facie* case, Goodwill demonstrated a legitimate non-discriminatory reason for his demotion. After conducting an investigation, Goodwill determined that Hughes was not meeting its expectations for a supervisor. "The critical inquiry . . . is not whether the employee actually engaged in the conduct for which he was [demoted], but whether the employer in good faith believed that the employee was guilty of the conduct justifying [demotion]." *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 861-62 (8th Cir. 2009).

Hughes asserts Goodwill's proffered reason, that he was not meeting their expectations, is a pretext for unlawful discrimination. He complains that Goodwill failed to conduct a thorough, good faith investigation, that Moore made no specific finding about the nature of the conflict between Hughes and Holmes, and that

Goodwill cannot point to any specific action of Hughes's that would warrant a demotion. "To prove pretext, [a plaintiff] must both discredit [the employer's] asserted reason for the demotion and show the circumstances permit drawing a reasonable inference that the real reason for his demotion was retaliation." *Gilbert v. Des Moines Area Cmty. College*, 495 F.3d 906, 918 (8th Cir. 2007). The Court finds Hughes fails to meet his burden of rebutting Goodwill's legitimate, non-discriminatory reason for his demotion. He does not dispute that he had prior disciplinary actions and that co-workers complained about his unprofessional behavior. Hughes presents no evidence to discredit the proffered reason for his demotion and no evidence that race was the reason behind his demotion.

Hughes asserts he was subjected to a hostile work environment and then was constructively discharged for causing a hostile work environment.[32] To establish a race discrimination claim based on a hostile work environment, Hughes must produce evidence that would allow a reasonable jury to conclude that he was a member of a protected group, he was subjected to unwelcome race-based harassment, the harassment was because of membership in the protected group, and the harassment affected a term, condition, or privilege of his employment. *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 892 (8th Cir. 2005).

---

[32]Am. Compl. at ¶ 43.

The workplace must be 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive.' The environment must be both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed by [the plaintiff].  In examining the objective component, we look to the totality of the circumstances, 'including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether the conduct unreasonably interfered with the employee's work performance.'  We also consider the 'physical proximity to the harasser, and the presence or absence of other people.'  Finally, when a plaintiff attempts to establish a hostile work environment based on the actions of co-workers, he or she 'must then present evidence that the employer 'knew or should have known about the harassment and failed to respond in a prompt and effective manner.' '

*Anderson v. Durham D & M, LLC*,  606 F.3d 513, 518-19 (8th Cir. 2010)(internal citations omitted).

The undisputed evidence establishes that over a period of a few months, Holmes cussed Hughes and told him he was prejudiced.  Hughes admits that the store manager tried to handle the first cussing incident by talking to them about it within a day or two.  After the incident in November 2013, Goodwill conducted an investigation.  While Hughes alleges that Horton, with the assistance of Holmes, intentionally created a workplace environment that was so hostile he could not remain at Goodwill, the Court finds he presents no evidence to support a claim that he was subjected to a hostile work environment.  Consistent with the finding that

unlawful race discrimination was not involved in the decision to demote him, the Court finds Hughes has created no genuine issue of material fact that he was subjected to race-based harassment.

Hughes bases his claim of constructive discharge on the same allegations as his hostile environment claim. Because the Court finds he fails to establish a hostile work environment discrimination claim, his constructive discharge claim fails as well. *See O'Brien v. Dep't of Agriculture*, 532 F.3d 805, 811 (8th Cir. 2008)(citing *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004)(a hostile work environment constructive discharge claim entails a higher burden than a hostile work environment adverse employment action).

2. Defamation and Loss of Consortium

Because the Court finds no issue for trial with respect to Hughes's Title VII race discrimination claim over which this Court has original jurisdiction, that claim will be dismissed with prejudice. The Court will dismiss, without prejudice, plaintiffs' supplemental claims pursuant to state law. *See* 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

## Conclusion

For the reasons stated, defendants' motion for summary judgment (ECF No. 38) is granted in part and denied in part.  Pursuant to the judgment entered together with this order, Hughes's claim pursuant to Title VII of the Civil Rights Act of 1964, as amended, is dismissed with prejudice, and plaintiffs' claims pursuant to state law are dismissed without prejudice.

IT IS SO ORDERED this 4th day of August, 2015.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE